John P. PARK, Personal Representative of the Estate of P.G. Parks a/k/a Pete Parks, Appellant,

v.

OUACHITA BAPTIST UNIVERSITY OF ARKADELPHIA, ARKANSAS, Appellee.

No. 83245.

Court of Appeals of Oklahoma, Division No. 1.

Feb. 21, 1995.

---

John B. Axton, Ada, for appellant.

H.A. Bud Carter, Oklahoma City, for appellee.

## *MEMORANDUM OPINION*

CARL B. JONES, Judge:

This appeal involves primarily a legal question: whether unpaid bonus money to be paid to a lessor of an oil and gas "top lease" is, after the death of the lessor, a debt owed to the lessor's estate, or still a part of the mineral estate. The trial court determined that it was part of the mineral estate and under the facts of the case, we agree.

The trial below was to the court and the facts were, for the most part, undisputed. Appellant's decedent, P.G. Parks, owned certain mineral interests in Oklahoma. In August, 1989, Parks gave oil and gas top leases to a lessee, Robert Gibbs, to a tract in Latimer County (Tract 1) and another in LeFlore County (Tract 2). Both tracts were, at that time, subject to valid existing oil and gas leases. The Tract 1 top lease, dated August 18, 1989, was for a three year term commencing July 20, 1990. It states that it is "subject to and inferior to that certain oil and gas lease dated June 10, 1987, ... so long as that lease shall remain in force ...". The Tract 2 top lease, dated August 23, 1989, was for a term commencing April 2, 1990. It was specifically made subject to a lease dated April 2, 1985.

The bonus to be paid for the Tract 1 top lease was to be $40,200.00. At the time the lease was executed Parks was paid $10,000.00 of that bonus. For the $30,200.00 balance of the bonus, Parks was given a bank draft for collection. That draft contains the following language:

> "The payor shall have 5 (five) banking days after 7–20–90 and vesting of title & provided no drilling has commenced prior to the expiration of the existing lease the receipt of this draft by the collecting bank, whether accompanied by other papers or not for title examination. Neither forwarding bank nor payee(s) nor the grantor(s) of such lease or conveyance may demand return of this draft or any accompanying papers prior to expiration of the time fixed. In case payment is not made before expiration of the time fixed Escrow Agent shall return this draft and any accompanying papers to forwarding bank and no liability for payment or otherwise shall be attached to any of the parties hereto."

The Tract 2 top lease bonus of $133,174.56 was handled similarly. At the time of executing the top lease, Parks received 25% of the bonus, $32,964.00. The balance of $100,210.56 was given to Parks in the form of a bank draft. The draft contained language identical to that quoted above except that the effective date of the lease was April 2, 1990, rather than July 20, 1990.

The lessor, Mr. Parks, died on October 18, 1989. The two drafts for the balance of the bonuses were paid on January 2, 1990, apparently upon the authorization of and receipt

by Parks' bank of the necessary funds from the lessee. From that point on, the funds from the payment of those two drafts ($130,-410.56) was in the possession of Parks' estate.

Parks died testate. His will left to Appellee University the sum of $500,000.00 and all his interest in real property, including surface and minerals in Latimer, LeFlore and Texas Counties in Oklahoma. It was also Parks' expressed intent that his bequest to the University include the proceeds from any mineral production.

Appellant, the Personal Representative of Parks' estate, contends the two drafts paid after Parks' death are actually personal property of the estate to which the University has no right. Appellant's argument is that at the time of Parks' death the as yet unpaid drafts were in the nature of accounts receivable, and because they were in the possession of Parks and his bank, they were severed from and not part of the mineral estate.

■ Appellant acknowledges that the right to receive bonuses is an incident of ownership of a mineral interest. See, *Sharp v. Gayler*, 737 P.2d 120 (Okla.App.1987). Such incidents of ownership can be conveyed or reserved. However, because the top leases had already been executed, the consideration for which was the bonus money, Appellant contends the bequest to the University could not have included the contracted for, but unpaid bonuses.

■ There was ample evidence, although disputed, that the additional bonus payments were contingent on the expiration of the existing leases.[1] Certainly, that interpretation is most consistent with the language of the top leases and with the language on the bank drafts. In fact, any other interpretation would be wholly inconsistent with these documents. One can reasonably conclude from this evidence that Parks could not compel

payment of the drafts prior to the due date when the leases were to go into effect, nor did the drawee bank have the authority to pay them early, absent being so directed by the lessee. And further, because of the contingency of the termination of the prior or bottom leases, there was no guarantee that the drafts would ever become payable. It was only after Parks' death that the right to the remaining bonus payments accrued. As the bequest of the mineral interests to the University became effective upon Parks' death, the University owned the mineral interests and was thus entitled to the bonus payments when they were later made. A specific devise carries with it any interests, dividends, rents, profits or accretions that may accrue on the realty after the death of the testator and before the actual satisfaction of the devise. 80 *Am Jur 2d Wills* § 1595 (1975) (citing cases).

Appellant also argues that the Fourth paragraph of Parks' Will shows an intent to restrict the cash gift to the University to $500,000.00. It appears to this Court, however, that the Fourth paragraph of the Will has nothing to do with the specific bequest to the University. Nevertheless, we hold that the right to the additional bonuses had not accrued and thus had not been severed from the mineral estate at the time of Parks' death. Thus, the right to future bonus payments was just one of the several incidents of ownership of the mineral estate that was inherited by the University. In other words, the right to the bonus money comes to the University only on account of it being an incident of ownership of the minerals. The Will clearly grants to the University *all* of Parks' interest in those surface and mineral estates. That included all incidents of Parks' ownership.

■ In a law action tried to the court, the court's judgment will not be disturbed on appeal in the absence of legal errors if there is any competent evidence reasonably tend-

---

1. It should be noted that there was also evidence in the form of testimony of the lessee that the additional bonus payments were not contingent upon anything; that Parks could have received the entire bonus amount at the time the leases were executed, but that for tax purposes he opted to defer the majority of the bonuses until after the first of the next year.

ing to support the judgment. *American Fertilizer Specialists, Inc., v. Wood,* 635 P.2d 592 (Okla.1981). Because we find no legal errors and there is ample evidence supporting the judgment, we must affirm.

AFFIRMED.

JOPLIN, J., concurs.

HANSEN, P.J., not participating.